ALEJANDRO DÍAZ COLÓN, ETC., Plaintiff and Appellant, *v.* PUERTO RICO LAND AUTHORITY, Defendant and Appellee.

No. R-66-13.      Decided May 13, 1968.

*Ernesto Maldonado Pérez, Juan A. Díaz Marchand,* and *Tulio Villanueva Vázquez* for appellant. *Castro & Castro* for appellee.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE RIGAU delivered the opinion of the Court.

This is a claim for damages against the Land Authority for the death of a minor who was drowned in an irrigation canal of the Authority. The Superior Court dismissed the complaint.

Plaintiffs-appellants assign the following three errors: (1) that the trial court erred in weighing the evidence and in making findings not supported by the evidence; (2) that the trial court erred in applying to this case the doctrine laid down in *Vargas* v. *Water Resources Authority*, 86 P.R.R. 99 (1962); and (3) that the trial court erred in applying, without stating it, the defense of assumption of risks or contributory negligence.

The errors assigned were not committed. This is a deplorable accident, but juridically it is a clear case in which defendant did not have civil liability. The evidence showed the following.

For eminently public purposes the Land Authority operates irrigation systems. Said systems include irrigation canals, which at the scene of the accident some are three feet seven inches deep and others are three feet one inch deep. The deceased was thirteen and a half years old[1] and he was one inch short of being five feet tall. Defendant's employees had prohibited the children of the neighborhood to bathe in the

_____
[1] Part of the facts were stipulated. Although it was stipulated that the minor was 12 years old, according to the death certificate he was born on August 26, 1949. He died on February 12, 1963.

irrigation canal and they scolded them whenever they were caught bathing therein. Sometimes the children ran away when they saw any employee of the Authority approaching. At 12:30 p.m. on the day of the events some children found the deceased's clothes at the edge of the canal and further away they found his dead body inside the canal. The autopsy showed that his gastric cavity contained 1,000 c.c. of food (1 liter) which makes it seem probable that the boy got into the canal immediately after lunch.

Plaintiffs tried to establish that the water was running rapidly through the canal, but an expert witness testified that there the water was running at the rate of one-half foot per second, that is, a little less than one-third of a mile per hour. In his findings of fact the trial judge determined that the water was running "at a speed not greater than one foot per second." It may be seen that this determination was supported by the evidence, although it is more favorable to plaintiffs (within their theory) than the evidence which was actually produced—the testimony of the aforementioned expert witness. Plaintiffs sought to prove a higher speed since they tried to make the canal appear as unusually dangerous.

Returning to the velocity of the water it is significant that witness Juan Crespo, defendant's employee, explained that one of the reasons why he had prohibited the children from bathing in the canal was because "they obstructed the passage of the water." This seems to indicate that the water did not run there at a high velocity.

As it was correctly determined by the trial court, this case falls squarely under the doctrine laid down in *Vargas* v. *Water Resources Authority, supra.* There the situation was very similar to the case at bar, except that maybe it was a little more favorable to plaintiffs and yet we refused to impose any liability on defendant. There the minor who was drowned was three years and five months old, much younger than the one in the case at bar. There it was determined that the

water was running at the rate of two feet per second and that the canal was seven feet deep.

In *Vargas* we determined, and we ratify herein, that said irrigation canals have very similar characteristics to those of any natural body of running water; that is, rivers and creeks. We admit that the rivers, creeks, and canals have certain attraction for everybody—children and adults— but it can hardly be expected that the owners of tracts of land upon which rivers, creeks, and canals flow, cover them or maintain therein a guardian or lifeguard force. They are not attractive nuisances within the technical juridical meaning of the phrase. In *Vargas, supra*, citing other authorities, we said at p. 103:

> "The canal, as will be observed, has the characteristics of a natural stream, and can no more be regarded as an attractive nuisance than would a river flowing through the city or a pond or lake therein . . . . There is no greater necessity to build a fence or put a cover over the canal than there would be to fence or cover a natural stream, and there can be little distinction made between them so far as the 'turntable' doctrine is concerned."

As we stated in *Pérez Vázquez* v. *Heirs of Amill*, 89 P.R.R. 363, 367 (1963), and in *Díaz* v. *Central Lafayette*, 66 P.R.R. 780, 781 (1947) the attractive nuisance doctrine requires property owners to take affirmative precautions to protect children who do not realize the dangers to which they are subjecting themselves, but opposed to this doctrine is the policy against unduly interfering with or placing burdensome and unreasonable restrictions on the use of the property. In *Pérez Vázquez* we pointed out the two interests in conflict herein, the protection of the children and the reasonable use of the property. This last consideration gains more force in this case since we are not concerned herein with the use of a private property but with a work and operation of unquestionable public use and benefit.

■ On the other hand, the courts have acknowledged that children know the danger presented by water, fire, and height. *Vargas, supra,* at p. 102 and authorities cited therein. Certainly, a thirteen and a half year old boy recognizes the danger that those elements involve for human life. The fact that the canal was near a village does not by itself make defendant unavoidably liable, since in a country like Puerto Rico, having a density of population of 700 inhabitants per square mile where the population is spread over the entire island in towns, villages, wards, and communities near the sources of work, it is practically impossible that there exist irrigation canals, factories or any other thing located far from every community or town.

■ We have examined our case law on the doctrine of attractive nuisance and related cases and we have found that the same is not favorable to appellants. The facts of the case at bar do not place it within said doctrine.[2]

The judgment of the Superior Court, Arecibo Part, rendered in this case on December 10, 1965, will be affirmed.

---

[2] *López Surita* v. *Water Resources Authority,* 93 P.R.R. 587 (1966); *Murcelo* v. *H. I. Hettinger & Co.,* 92 P.R.R. 398 (1965); *López Reyes* v. *Emmanuelli,* 90 P.R.R. 670 (1964); *Pérez Vázquez* v. *Heirs of Amill,* 89 P.R.R. 363 (1963); *Vargas* v. *Water Resources Authority,* 86 P.R.R. 99 (1962); *Bonilla* v. *Loíza Sugar Co.,* 67 P.R.R. 359 (1947); *Díaz* v. *Central Lafayette,* 66 P.R.R. 780 (1947); *Bernard* v. *P.R. Ry., Lt. & P. Co.,* 60 P.R.R. 213 (1942); *Ramos* v. *Sucesión J. Serrallés,* 51 P.R.R. 332 (1937); *Berríos* v. *Gárdu,* 46 P.R.R. 773 (1934); *Pantoja* v. *American Railroad Co. of P.R.,* 45 P.R.R. 534 (1933); *Alvarez* v. *Santa Isabel Sugar Co.,* 37 P.R.R. 100 (1927); *González* v. *P.R. Ry., Lt. & P. Co.,* 34 P.R.R. 545 (1925); and *Rivera* v. *Porto Rico Drug Co.,* 32 P.R.R. 470 (1923).